*In re* QUEJAS presentadas contra el SECRETARIO DE JUSTICIA, LIC. HÉCTOR RIVERA CRUZ.

*Números:* AB-85-21       *Resueltos:* 30 de junio de 1987
AB-85-23

*Héctor Rivera Cruz, pro se.*

## RESOLUCIÓN

A la moción de reconsideración, no ha lugar.

Así lo pronunció y manda el Tribunal y certifica el Subsecretario General. El Juez Asociado Señor Negrón García emitió opinión concurrente, a la cual se unió el Juez Asociado Señor Ortiz. El Juez Presidente Señor Pons Núñez emitió un voto particular a favor de la reconsideración, al cual se une el Juez Asociado Señor Alonso Alonso, quien además emitió un voto particular. El Juez Asociado Señor Rebollo López emitió una opinión en la cual concluye que el Tribunal no está en estos momentos en posición de resolver la referida moción de reconsideración por carecer de los hechos y elementos de juicio necesarios para así hacerlo. La Juez Asociada Señora Naveira de Rodón y el Juez Asociado Señor Hernández Denton, inhibidos.

(*Fdo.*) Heriberto Pérez Ruiz
*Subsecretario General*

—O—

Opinión concurrente del Juez Asociado Señor Negrón García, a la cual se une el Juez Asociado Señor Ortiz.

I

El 11 de mayo de 1987, decidimos sobre estas quejas. Archivamos la queja AB-85-23 por inmeritoria e infundada. En cuanto a la AB-85-21 concluimos:

> Recapitulando, el Secretario de Justicia, Héctor Rivera Cruz —al suscribir el 15 de marzo de 1985 la opinión de que el puesto de Gerente Escolar, tal como fue creado, clasificado e implantado era ilegal y contrario a las leyes y reglamentos aplicables, y que procedía la separación de aquellas personas que lo ocupaban— infringió el Canon 21 de Ética Profesional, en cuanto al valor deontológico primario que lo inspira. Incurrió en un claro e insalvable conflicto de intereses por razón de la representación legal simultánea que ostentaba de los Gerentes Escolares demandados y los codemandados licenciado Romero Barceló y la doctora Lacot en el caso Civil Núm. PE-82-970, y la señora Aponte Roque. Actuó además en contra de las normas de abstención relativas al trámite de consultas y opiniones adoptadas por él ese mismo día. Infringió además el Canon 19 de Ética Profesional, pues durante un período de tiempo irrazonable, no cumplió con el deber de información que dicho canon exige de mantener a sus representados debidamente informados. *In re Secretario de Justicia,* 118 D.P.R. 827, 867–868 (1987).

El contenido deontológico y moral de estos pronunciamientos quedan hoy salvados al declararse sin lugar la reconsideración solicitada por el Secretario de Justicia, Héctor Rivera Cruz.

El inventario final es normativamente consistente con nuestra decisión original que rechaza la tesis de que el conflicto de intereses que indubitadamente creó el Secretario de Justicia Héctor Rivera Cruz, fue institucional. Por ende, su desconocimiento personal —al estar accesible

la información mediante diligencias mínimas de su parte—
no constituye un eximente ético.

Una vez más este foro abre brecha en la solución de una
de las grandes fallas en la administración pública
contemporánea, a saber, la continua dilución de la
responsabilidad ética de los funcionarios públicos que son
abogados. *Cf. In re Rodríguez Torres*, 106 D.P.R. 698 (1978).

> Los campos profesionales se caracterizan además por la
> existencia de criterios ideales de superación, de objetivos que
> jamás se alcanzan en su totalidad, pero cuya incitación
> mantiene en forma a la clase profesional. Si esos criterios
> valorativos se descartan y si desaparecen las instancias
> ejemplares, se pierde la visión del debe ser y queda
> desmoralizada e invertebrada la profesión.
>
> Estos criterios del debe ser están relacionados también con
> la llamada ética profesional que en nuestros tiempos por
> desgracia ha subrayado más las consideraciones que se deben
> entre sí los profesionales que las obligaciones superiores
> contraídas con el público no profesional y con los valores
> indispensables a su ministerio. A fin de cuentas nuestra
> estatura profesional la determina la dirección en que se
> encamina nuestro proceder cotidiano, si hacia los ideales de
> excelencia o los ideales de conveniencia. J. Benítez, *La
> Función Social del Abogado*, 17 Rev. C. Abo. P.R. 225, 233–
> 234 (1957).

Rechazamos la postura del Lic. Héctor Rivera Cruz, que
como Secretario de Justicia en pocas horas, su mano derecha
no tiene que conocer lo que hace la izquierda y puede
descargar ligera y superficialmente —sin consecuencias
éticas— las responsabilidades de su cargo. No podríamos
refrendar esa posición. Si aceptamos que nadie le notificó
del pleito PE-82-970, aun así, ¿cómo es posible que el mismo
15 de marzo de 1985 suscribió la opinión que decretaba la
nulidad de los cargos de Gerentes Escolares, adoptó las
normas de abstención en casos sub júdice, y *sua sponte* no
inquirió si éstas afectaban las opiniones emitidas ese día?

¿No le preocupó esa posibilidad? Independientemente de su desconocimiento sobre el pleito PE-82-970, no hacerlo demostró una pasividad que configura un juicio pobre y poco prudente. Incomprensiblemente no desplegó las diligencias necesarias para que desde ese día, 15 de marzo, tuviesen virtualidad sus normas de autoabstención en casos sub júdice. Ello hubiese evitado todo este enojoso trámite. Tal conducta fue la causa directa que generó el conflicto de intereses. Esa omisión no es éticamente transferible a sus subalternos o asesores especiales. Tampoco justifica no haber mantenido debidamente informados a los Gerentes Escolares y al Lic. Carlos Romero Barceló de los trámites importantes del caso. En resumen, ni procesal ni en sus méritos procedería reconsiderar.

## II

En su reconsideración de 26 de mayo de 1987, nos expone que nuestra decisión constituyó una sorpresa total "toda vez *que no fue hasta leerla que entendí que el Tribunal consideraba que la queja presentada por el Lcdo. Carlos Romero Barceló hacía una imputación en el sentido de haber emitido una opinión sobre los Gerentes Escolares cuando sabía que había un caso pendiente en el Tribunal Superior* y que el Departamento representaba a los Gerentes Escolares en ese caso. Debo apuntar que lo trágico de esta situación es que esa imputación viene como una conclusión del Tribunal y *no como una imputación factual del querellante* ... [; y que a] la luz de la conclusión contenida en la Opinión y Sentencia del Tribunal, este Secretario siente que debe enfrentarse a la misma. Para hacerlo cabalmente me he visto obligado a traer a la consideración de este Honorable Tribunal *un récord completo de los hechos reales del caso,* en que se expone particularmente los detalles del conocimiento y los trámites seguidos por oficiales del

Departamento de Justicia en relación al caso de los Gerentes Escolares". (Énfasis suplido.) Moción de 26 de mayo de 1987, pág. 1.

Para sostener esa posición, el Lic. Héctor Rivera Cruz, bajo juramento, nos asevera que no conocía la existencia del caso judicial PE-82-970 y que nunca fue informado de ello por sus subalternos principales o asesores especiales. A tal efecto, para demostrar sus manifestaciones fácticas, acompaña unas declaraciones juradas de varios abogados del Departamento de Justicia que de una u otra forma participaron en el trámite judicial y administrativo de dicho caso y otros incidentes relacionados,[1] y nos ofrece ampliarlas con las de otras personas.[2] Nos relaciona los trámites principales antes y después de su opinión.

Aduce que durante este proceso disciplinario no se le imputó específicamente tal conocimiento, y por ende, no se defendió al respecto. Ahora lo hace. Cuestiona que el Tribunal no haya seguido "estrictamente el procedimiento promulgado por la Regla 13, desde el inicio mismo de la acción disciplinaria". A juicio suyo, la queja era una "institucional, y no contra el abogado individual Rivera Cruz", y de su "contestación no [surgían] hechos que justificaran la imposición de sanciones sin necesidad de trámites ulteriores". Alega que no se le brindó notificación adecuada de los cargos en su contra ni oportunidad

---

[1] Lcdo. César R. Miranda, ex Subsecretario del Departamento de Justicia; Nelson R. Cordero Otero, ex Secretario Auxiliar de Administración del Departamento de Justicia; Lic. Felipe Algarín Rodríguez, Secretario Auxiliar de Litigios del Departamento de Justicia cuando ocurrieron los hechos y al presente, y Lic. Guillermo Garau Díaz.

[2] Juez Asociada, Señora Miriam Naveira de Rodón, ex Asesora del Departamento en materia de la Ley Núm. 9 de 26 de noviembre de 1975, según enmendada, 32 L.P.R.A. sec. 3085 *et seq.*; Juez Superior Crisanta Rodríguez, ex Ayudante del Secretario de Justicia durante el período en que ocurrieron los hechos, y Lic. Bruno Cortés Trigo, ex Director de la División de Opiniones en dicho período y Secretario actual de este Tribunal.

razonable de contrainterrogar y presentar su prueba. Como consecuencia, concluye que se violó el debido proceso de ley que exige nuestra Constitución y la federal. Finalmente, nos informa las medidas cautelares adoptadas hace tiempo en la prevención de posibles ulteriores conflictos de intereses.

## III

Hemos evaluado reflexivamente todos los argumentos del Secretario de Justicia en apoyo de su reconsideración; con esmero hemos examinado todos los documentos unidos a la misma. Los consideramos suplementarios a los documentos anteriormente sometidos y le damos entero crédito a los datos y hechos que surgen de su faz. Aun con este "récord completo de los hechos del caso"[3] —al decir del Lic. Héctor Rivera Cruz— no le asiste la razón y procedería declarar su pedido sin lugar.

Ab initio, en buena metodología hemos de descartar la alegación de que no se observó el debido proceso de ley. El Secretario de Justicia Héctor Rivera Cruz no cuestiona que fue notificado de las quejas, y que en lo atinente, se siguió la esencia de la Regla 13 de nuestro Reglamento, 4 L.P.R.A. Ap. I-A. No podría. Sin embargo aduce que las quejas eran institucionales, confusas e imprecisas, y que después de su contestación original no respondió los escritos del Lic. Carlos Romero Barceló de 27 de noviembre de 1985 y 14 de enero de 1986, "por entender que no había imputaciones claras a su conducta ... ". Su posición es insostenible. Sus planteamientos exigen, a modo de repaso, una detallada relación del trámite.

---

[3] En su reconsideración el Lic. Héctor Rivera Cruz no nos solicita una vista evidenciaria. Asumimos que ello se debe a que los documentos que acompaña, en unión a los autos anteriores, reflejan el "récord completo de los hechos del caso".

Tal vista sería ante el Tribunal e implicaría un trámite disciplinario con la designación de un Procurador Especial para investigar y formular cargos.

*Quejas del Lic. Carlos Romero Barceló y los Gerentes Escolares*

Según nuestra decisión, desde el comienzo, la primera queja del Lic. Carlos Romero Barceló —fechada el 27 de noviembre de 1985 y presentada el 9 de diciembre— directamente le imputó violaciones a los Cánones 1, 18, 21 y 30 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, "al insisti[r] en asumir mi representación legal y la de los demás codemandados a pesar del inherente conflicto de intereses", no mantenerlo debidamente informado, y proveer una defensa inadecuada en el caso aludido.

Específicamente el Lic. Carlos Romero Barceló consignó:

De los documentos y alegaciones en el pleito de Olga Iris Mateo, [*supra,*] en el Tribunal Superior, de la demanda pendiente en el Tribunal Federal entre varios de los c[od]emandados en este pleito y la Secretaria de Instrucción, así como de los documentos, memoranda y cartas que obran en los expedientes en el Departamento de Justicia, Departamento de Instrucción y la Asociación de Maestros de Puerto Rico, *surge una situación sumamente seria en relación al comportamiento profesional del Lic. Héctor Rivera Cruz, Secretario de Justicia.*

En este caso *existe un serio conflicto de intereses* desde que el Secretario de Justicia asumió la representación de todos los c[od]emandados, cuyo conflicto de intereses, *y la manera en que por motivo de ese conflicto ha actuado el Secretario de Justicia, forma parte de la razón por la cual se dictó una Sentencia Sumaria Parcial. A pesar de saber de ese conflicto de intereses,* el Secretario de Justicia nunca le explicó ni le informó a los c[od]emandados Gerentes Escolares, ni a la Dra. María Socorro Lacot, ni a mí, como sus clientes, que había una Moción de Sentencia Sumaria en el Tribunal y que la misma no había sido contestada.

A pesar de que allá para el mes de enero o febrero la Secretaria de Instrucción le había solicitado una opinión al Secretario de Justicia, éste no nos informó de esa situación, *ni a[u]n después de emitir la opinión el 15 de marzo de 1985.*

En una carta relacionada con el caso de Carlos Gutiérrez indica el propio Secretario de Justicia, que el Departamento continuará representándome en *todos* los casos pendientes en que yo aparezco como demandado. Esa es la única contestación que tengo yo a mi carta del 11 de febrero de 1985 (Documento Número 2), dirigida al Secretario de Justicia, donde le informaba que tenía conocimiento de que él le pidió la renuncia a todos los abogados que me representaban en las demandas contra mi persona como Gobernador y en mi carácter personal. Véase carta del 11 de marzo de 1985 donde el Lic. Rivera Cruz no acepta que ningún abogado, que no sean los del Departamento de Justicia, me represente. (Documento Número 4).

*Desde aqu[e]l momento le indiqué podrían surgir diferencias de criterio. Frase ésta que cualquier abogado debe interpretar como un alerta a un probable conflicto de intereses y que debe llevarlo a una evaluación ponderada de su participación en el caso y la probable violación a los cánones de ética si continúa representando a partes con criterios encontrados.*

A pesar de que para esa fecha *estaba ya próxima a dictarse la opinión del 15 de marzo,* todavía no me informa nada al respecto y por el contrario persiste en seguir representándome.

Las otras cartas demuestran que el Secretario seguía insistiendo en que yo no podía escoger mi abogado, que el Departamento de Justicia me representará y solicitaría mi exclusión como demandado en los casos.

No es hasta el 17 de junio, *tres meses más tarde, que me notifica sobre la opinión qu[e] él emitió el 15 de marzo. Opinión que nunca debió haber emitido, por los tan evidentes conflictos de intereses existentes.* Sin embargo en esa carta del 17 de junio de 1985 dirigida a mí (documento número 9), *no menciona en forma alguna el hecho de que está pendiente una Moción de Sentencia Sumaria, que hacía un mes había sido ya radicada en el Tribunal.*

. . . . . . . .

*La interacción e inte[rr]elación de la actual Secretaria de Instrucción en su puesto anterior como Secretaria Ejecutiva de la Asociación de Maestros y hoy la más alta funcionaria del Departamento de Instrucción, c[od]emandado, así como el*

*hecho de que el actual Su[bs]ecretario de Instrucción, Roque Díaz Tizol, segundo en rango del Departamento c[od]emandado, es al mismo tiempo, demandante en el pleito y anteriormente era Su[bs]ecretario ejecutivo de la Asociación de Maestros, complica más aún la situación de conflicto de intereses y la posibilidad de que haya colusión entre las partes.*

El abandono por parte del Lic. Héctor Rivera Cruz, de los intereses de los Gerentes Escolares c[od]emandados; de la Dra. María Socorro Lacot y los intereses míos como sus clientes, es un abandono que excede por mucho la mera negligencia profesional. *El Secretario de Justicia nos ha ocultado hechos esenciales y nos ha ocultado la existencia de procedimientos y conflictos que él muy bien conocía.* El Secretario de Justicia evitó con sus acciones que pudiéramos estar debidamente representados y que nuestros abogados hicieran las alegaciones y presentaran al Tribunal los argumentos correspondientes en defensa nuestra. (Énfasis suplido.) Carta de 27 de noviembre de 1985, págs. 3-5.

Ese mismo día el Secretario de Justicia fue notificado por el Secretario Interino del Tribunal Supremo Sr. Heriberto Pérez y, según el procedimiento vigente, se le concedió hasta el 19 de diciembre para contestar (AB-85-21).([4]) Así lo hizo en esa fecha.

*Contestación del Secretario de Justicia Lic. Héctor Rivera Cruz*

En su contestación jurada dirigida al Juez Presidente, Señor Pons Núñez —con copia a los Jueces Asociados— cuestionó la suficiencia de la queja por no haber sido jurada por el Lic. Carlos Romero Barceló y posteriormente discutió sus méritos.

---

([4]) Pocos días antes, el 16 de diciembre, un sinnúmero de ex gerentes y superintendentes escolares —entre ellos varios de los codemandados en el caso Civil Núm. PE-82-970— endosaron la primera queja del Lic. Carlos Romero Barceló y se unieron a sus planteamientos.

Por ser reveladoras y rebatir los argumentos procesales que ahora en reconsideración nos expone, veamos lo que el Lic. Héctor Rivera Cruz nos planteó en aquel momento:

De la carta cursada por el Secretario Interino de este Tribunal al Lic. Héctor Rivera Cruz, no surge si fue el Tribunal en Pleno quien requirió que se reaccionara a la queja presentada por el licenciado Romero Barceló. Por otra parte, el segundo párrafo de la carta dirigida por el juez asociado de este Honorable Tribunal, Hon. Carlos J. Irizarry Yunqué, al licenciado Romero Barceló, tampoco surge con claridad si fue el Tribunal en Pleno quien le requirió al licenciado Héctor Rivera Cruz que se expresara sobre la queja presentada en su contra. *Sostenemos, respetuosamente, que de acuerdo a la letra de la Regla 13 del Reglamento de este Tribunal uno solo de sus jueces no puede requerir que el abogado contra quien se presenta una queja proceda a contestarla.* La Regla tampoco faculta al Secretario del Tribunal a requerir tal contestación. Hacemos este comentario porque entendemos que la queja presentada contra el Secretario de Justicia demuestra que el principio que inspira la Regla 13 del Reglamento de este Tribunal es muy sabio. *La disposición que exige que sea el Tribunal en Pleno quien pueda requerir que se conteste una queja presentada contra un abogado es una protección adicional para evitar que un abogado se vea obligado a comparecer a defenderse ante este Honorable Foro de una queja infundada.* Es ese el mismo propósito que está presente al exigirse que toda queja contra un abogado tenga que ser presentada por escrito y bajo juramento.

Las dos quejas presentadas por el licenciado Carlos Romero Barceló en contra del Secretario de Justicia, no fueron juradas. En ambos casos el juez asociado, Carlos J. Irizarry Yunqué decidió que no era necesario cumplir con ese requisito ya que el mismo no es de cumplimiento estricto, y además porque en este caso quien presenta la queja es un abogado, que a su vez es el e[x G]obernador de Puerto Rico. Diferimos respetuosamente del razonamiento expresado por el

Honorable Juez Irizarry Yunqué. Como señalamos anteriormente, en nuestra opinión el requisito de que la queja sea jurada no admite *excepción alguna.* Este requisito pretende proteger a los abogados de estar expuestos a quejas frívolas, a la vez que evita el que este Honorable Tribunal tenga que intervenir en ese tipo de quejas. Si se permitieran excepciones a esa norma, los abogados, y más aún aquellos que ocupan posiciones en el gobierno, estarían expuestos a un número mayor de quejas inmeritorias. La deferencia que merece quien haya ocupado la posición más alta en nuestro gobierno no justifica que se adopte una excepción a una regla clara y precisa. Debe tenerse presente que los funcionarios públicos merecen la mayor protección posible en contra de pleitos y querellas inmeritorias, las cuales consumen tiempo valioso y energías del funcionario que podrían ser dedicadas a servirle a nuestro pueblo. [*Cf.*] *Harlow* v. *Fitzgerald,* 457 U.S. 800 (1982); *Mitchell* v. *Forsyth,* 53 U.S.L.W. 4798 (19 de junio de 1985); *Krohn* v. *United States,* 742 F.2d 24 (1er Cir. 1984); *Floyd* v. *Farrell,* 765 F.2d 1 (1er Cir. 1985). *Un funcionario público que a su vez es abogado no debe estar sujeto a que se utilicen los procedimientos disciplinarios a los que está sujeta nuestra profesión para hostigarlos y distraer su atención.* La falta de juramento en la queja presentada por el licenciado Carlos Romero Barceló en contra del Secretario de Justicia *ocasiona que esa queja sea defectuosa y justifica de por sí que la misma sea desestimada.* No obstante, a continuación discutimos las imputaciones que el licenciado Carlos Romero Barceló le hace al Secretario de Justicia y demostramos la *frivolidad de tales imputaciones.* (Énfasis suplido.) Carta de 19 de diciembre de 1985, págs. 4–6.

Luego de esa argumentación, el Lic. Héctor Rivera Cruz procedió a hacer un análisis minucioso de los méritos de las imputaciones del Lic. Carlos Romero Barceló las cuales —según palabras del propio Secretario de Justicia— las resumió en "tres categorías: (1) que el Secretario de Justicia defendió intereses encontrados y que al así hacerlo violó el [C]anon 21 de [É]tica Profesional; (2) que la defensa provista por el Secretario de Justicia fue inadecuada y por tal razón

el Secretario de Justicia violó los [C]ánones 1, 18 y 35 de [É]tica Profesional; (3) que el Secretario de Justicia no mantuvo debidamente informado a sus clientes, situación regulada por el [C]anon 19 de [É]tica Profesional, el cual no es citado por el Lic. Romero Barceló en su queja". Íd., pág. 11.

Después argumentó su criterio de que tales imputaciones eran imprecisas, infundadas, frívolas e improcedentes. Por último, bajo el acápite de *conclusión*, en lo pertinente, indicó:

> La naturaleza totalmente frívola de las "quejas" presentadas por el licenciado Romero Barceló contra el Honorable Secretario de Justicia revelan a nuestro juicio una intención de *hostigar personalmente* al Secretario con el propósito de obstaculizar su labor gubernamental. Por eso es necesario que se cumpla estrictamente con el requisito de juramento y con los procedimientos dispuestos por la Regla 13 de tal forma que *se le exija una contestación al Secretario de Justicia únicamente en aquellos casos en que el Tribunal en Pleno entienda que debe contestarse una queja presentada. De lo contrario podría ser que el Secretario de Justicia tuviera que dedicarse a contestar quejas de esta naturaleza, no importa lo insustanciales e inmeritorias que sean.* (Énfasis nuestro.) Ibíd., págs. 28–29.

Bajo este enfoque, el Lic. Héctor Rivera Cruz solicitó del Tribunal que las cartas de 27 de noviembre y 10 de diciembre de 1985 fueran devueltas al remitente Lic. Carlos Romero Barceló; se ordenara la eliminación de cualquier anotación en el Registro de Quejas, o, en la alternativa, que la queja fuera archivada y sobreseída "a tenor con la Regla 13 del Reglamento".

*Réplica del Lic. Carlos Romero Barceló*

El 8 de enero de 1986 el Lic. Carlos Romero Barceló replicó la contestación del Secretario de Justicia Héctor Rivera Cruz. Por reflejar la naturaleza y carácter de la contienda disciplinaria que estaba definitivamente trabada

y sometida desde esa etapa al pleno del Tribunal, la transcribimos extensamente:

Examinada la contestación a la Querella radicada por el Secretario de Justicia, *entendemos que de la misma surgen admisiones que no solamente corroboran, sino que verifican la relación de hechos y las alegaciones de la Querella radicada por el suscribiente y dan lugar a que se tome acción disciplinaria contra el Licenciado Rivera Cruz.*

De la contestación a la Querella, en la página 7, surge que fue el propio Secretario de Justicia, Lic. Héctor Rivera Cruz, y no un subalterno el que " ... encontró que existían más de cuatrocientos (400) casos en los cuales habían sido contratados los servicios profesionales de abogados fuera del Departamento de Justicia. Debido a los altos costos que esto representaba para el erario público, el *nuevo Secretario determinó que debían cancerlarse todos los contratos que existían a ese momento con abogados que no pertenecían al Departamento de Justicia.* El nuevo Secretario decidió que los abogados del Departamento de Justicia continuarían representando a las personas demandadas que eran representadas por abogados de afuera del Departamento. *Sin embargo, en algunos casos en los que existía alguna posibilidad de conflicto con los intereses del Departamento, al igual que en casos en los cuales el Departamento no tuviera los recursos necesarios para atenderlos adecuadamente, por vía de excepción, se determinó que se habrían de contratar los servicios de abogados externos.*

Como puede verse claramente, por admisión del propio Secretario de Justicia, fue *él mismo quien personalmente canceló los contratos* en una forma arbitraria e intempestiva. Pero no solamente tomó la decisión de cancelar los contratos, sino que faltó a su deber de notificar a las partes interesadas que estaba cancelando los contratos, así como también dejó [de] notificar las razones por las cuales lo hacía.

En nuestra Querella específicamente se alega que no hubo una notificación de la cancelación de los contratos a las partes interesadas, incluyéndome a mí, lo cual surge también de mi carta del 11 de febrero de 1985. (Véase Anexo 2 de la Querella).

El no haber consultado, ni tan siquiera notificado a las partes demandadas de la cancelación de los contratos y de que el Departamento de Justicia era quien había asumido la defensa mía y de los otros demandados, resulta una clara violación a los Cánones de Etica Profesional.

Según aparece de las páginas 7 y 8 de la contestación a la Querella radicada por el Secretario de Justicia, fue el propio Secretario de Justicia quien tomó las siguientes decisiones:

1) Canceló más de cuatrocientos (400) casos donde había contratos de servicios profesionales con abogados fuera del Departamento de Justicia.

2) Determinó que los abogados del Departamento de Justicia continuarían la representación de aquellas personas que anteriormente eran representadas por abogados fuera del Departamento de Justicia.

3) En los casos donde había conflicto de intereses se contratarían abogados externos. (Ver página 7 de la contestación del Secretario).

*Cuando en algún momento entre el 2 de enero y el 18 de marzo de 1985, el Secretario de Justicia recibió la petición de la Secretaria de Instrucción en la cual le pedía su opinión sobre la legalidad de los puestos de Gerentes Escolares, el Secretario de Justicia tuvo que haberse percatado de la existencia de un conflicto de intereses. El conflicto de intereses es tan obvio que el propio Secretario de Justicia no se ha atrevido negarlo.*

La posición del Secretario de Justicia es a los efectos de que hasta que se radicó la Moción de Sentencia Sumaria *él no pudo haberse percatado de que existía un conflicto de intereses. El alegar que hasta tanto no se radicó la Moción de Sentencia Sumaria, él no se pudo percatar del conflicto de intereses, habla. muy mal de la capacidad intelectual y profesional del Lic. Rivera Cruz.*

Tan pronto el Secretario de Justicia recibió la petición de la Secretaria de Instrucción para una opinión sobre la legalidad de los nombramientos de los Gerentes Escolares, o cuando menos, tan pronto recibió el estudio y las recomendaciones de sus subalternos para emitir la opinión que a él le ha sido solicitada, *debió en ese momento haberse percatado del grave conflicto de intereses que no le permitía*

*emitir y formalizar la opinión.* Es precisamente la médula de la controversia en el caso de *Olga Iris Mateo y Otros* vs. *Carlos Romero Barceló y Otros* lo que está envuelto en la opinión que emitió el 18 [*sic*] de marzo de 1985. *Opinión que obviamente era contraria a la que había dado lugar a la acción de los demandados.* De aceptarse la opinión del Secretario de Justicia, como se aceptó por el Tribunal Superior sin que el suscribiente y los otros demandados tuvieran su día en corte, la decisión fundamental del caso tenía que ser perjudicial a los demandados.

*El Secretario de Justicia tampoco puede alegar que éste era uno de tantos casos de los cuales [é]l no puede ser responsable, porque esta controversia de los Gerentes Escolares ha sido una que se ha discutido ampliamente a nivel de la opinión pública en los medios de comunicación, fue tema de campaña del Partido Popular al cual pertenece el Secretario de Justicia; y fue discutida ampliamente en el Senado de Puerto Rico para quien trabajaba entonces el hoy Secretario de Justicia.* Existen razones además para creer que como Asesor e Investigador Especial en el Senado y Asesor e Investigador del Partido Popular y/o de su candidato a Gobernador, el hoy Secretario de Justicia participó en discusiones sobre el asunto de los Gerentes Escolares con anterioridad a la fecha de su nombramiento.

La cancelación del contrato de servicios profesionales en este caso se hizo allá para principios de enero de 1985. Esa cancelación nunca fue notificada a mí por el Secretario de Justicia y hasta donde yo sepa, tampoco fue notificada a ninguno de los otros co-demandados interesados.

El 11 de febrero de 1985, (Véase Anexo 2 de la Querella), *solicité se me hiciera un informe de todos los casos en que habían cancelado los contratos y advertí de los conflictos de intereses que podrían surgir en los casos.* Insistí en poder yo escoger la representación profesional. A esta comunicación el Secretario de Justicia hizo *caso omiso.* De hecho, todavía no ha contestado esa carta ni me ha rendido el informe de los casos que le había solicitado a pesar de que han pasado once (11) meses desde esa fecha.

El 18 [*sic*] de marzo de 1985 el Secretario de Justicia emite la opinión sobre los Gerentes Escolares, *copia de cuya opinión*

*todavía no me ha sido remitida ni a mi ni a ninguno de los co-demandados, ni aún a los abogados que ya han asumido nuestra representación. A pesar de que el Secretario de Justicia sabía, o debía haber sabido que su opinión del 18 [sic] de marzo de 1985 era una opinión totalmente opuesta a la opinión de los demandados, el Secretario de Justicia mantuvo silencio.*

Al final de la página 8 el Secretario de Justicia increíblemente se lamenta de que el suscribiente no le había planteado la posibilidad de conflicto de intereses en el caso pretendiendo echarme la culpa a mí. *Fue él quien faltó a los Cánones de Etica Profesional al no abstenerse de emitir la opinión que él sabía, o debió saber, era perjudicial al caso. Y no satisfecho con haber emitido una opinión que resuelve la controversia principal en contra de sus clientes, se mantiene callado y no le envía copia de la opinión a sus clientes.*

Pretende el Secretario de Justicia establecer que cumplió con su responsabilidad cuando al recibir la solicitud de Sentencia Sumaria, le pidió al Tribunal Superior que paralizara los procedimientos en el caso debido a que existía la posibilidad de un conflicto de intereses.

Es precisamente en este momento que surgen grandes interrogantes sobre las intenciones del Secretario de Justicia.

1) ¿[Por qué] no notificó a los demandados de la opinión emitida el 18 [sic] de marzo de 1985, *cuando el Secretario de Justicia sabía que había un pleito pendiente sobre el asunto de los Gerentes Escolares?*

2) ¿[Por qué] mantuvo silencio el Secretario de Justicia, y no fue hasta después de emitida la opinión y radicada ya la Moción de Sentencia Sumaria que le notificó al Tribunal por primera vez de un posible conflicto de intereses?

3) ¿[Por qué] esperó hasta el 17 de junio, más de un mes después de radicada la Moción de Sentencia Sumaria, para escribir al suscribiente y a los otros co-demandados haciendo mención de la opinión pero sin mencionar la Moción de Sentencia Sumaria y sin mencionar el planteamiento de conflicto de intereses que ya le ha hecho al Tribunal Superior?

La intención del Secretario de Justicia en este asunto surge claramente de la carta del 17 de junio de 1985 enviada al

suscribiente (véase Anexo 9 de la Querella), donde hace referencia a la opinión del 18 [*sic*] de marzo de 1985, pero no se envía copia de la misma (todavía no hemos recibido copia de la opinión).

En esa carta lo que me pedía a mí y a los co-demandados era que diéramos nuestra conformidad a la opinión sin habérnosla enviado, o que por el contrario se procedería a nombrar un representante legal para que litigara la legalidad del nombramiento de los Gerentes Escolares. También exigía que nos pusiéramos todos los co-demandados de acuerdo en cuanto a qué abogado nos habría de representar.

El Secretario de Justicia pierde vista, o aparentemente no entiende, que la representación profesional es algo de carácter muy especial, que envuelve la confianza, tanto profesional como personal, que una persona tiene en su abogado. El mero hecho de el Secretario de Justicia insistir en que uno de sus clientes tenga que aceptar como representante legal a un abogado que no desea aceptar, por la razón que sea; si no constituye una violación a los Cánones de Etica está muy cerca de serlo.

El Secretario pierde de vista además de que puede existir conflicto de intereses entre los propios c[od]emandados, no en cuanto a cuál debe ser la ley en términos a los nombramientos de los Gerentes Escolares, sino en cuanto a la responsabilidad económica que tendríamos los demandados. O sea, los Gerentes Escolares ocupan sus posiciones y actúan por las decisiones tomadas por sus superiores quienes son a la vez c[od]emandados. Por lo tanto, la responsabilidad no es la misma y sus intereses pueden estar en conflicto con los intereses de sus superiores.

El que el Secretario de Justicia insista en que superiores y subalternos tengan los mismos abogados, puede llevar al abogado a una situación donde exista un conflicto de intereses.

La alegación de que el tiempo que pasó sin que se contratara representación legal es responsabilidad de los demandados, por no querer que un solo abogado los representara a todos, es una alegación frívola y carece de méritos. Fue el propio Secretario de Justicia y sus subalternos quienes han dilatado el procedimiento con su obstinación y testadurez de que todos los demandados se pongan de acuerdo en escoger un solo

abogado. Además, aun cuando su alegación tuviere méritos, ello no lo relevaba de su obligación de notificar a sus clientes (los co-demandados y a mí) de que había una Moción de Sentencia Sumaria pendiente.

El hecho de que hubo conversaciones y correspondencia entre el Secretario de Justicia y los demandados y los abogados que ahora ostentan su representación, sin que en ningún momento el Secretario de Justicia le notificara a las partes que había una Moción de Sentencia Sumaria pendiente, es una crasa violación a los Cánones de Etica Profesional.

1) ¿[Por qué] el Secretario de Justicia y sus subalternos no notificaron a sus clientes de la Moción de Sentencia Sumaria?

2) ¿[Por qué] tampoco le notificaron con copia de la Moción para paralizar los procedimientos por supuesto conflicto de intereses?

3) ¿[Por qué] no le señalaron la urgencia de tomar una decisión?

El Secretario de Justicia no ha dado contestación alguna a las anteriores preguntas. Por el contrario, sus alegaciones y su relación de hechos corrobora el que él sí escondió al suscribiente y a los co-demandados, sus clientes, la existencia de la Moción de Sentencia Sumaria y la urgencia de resolver el asunto.

*Lo que nos sorprende de la contestación del querellado es el hecho de que aparentemente no entiende la importancia y la seriedad del asunto ante este Honorable Tribunal.* Para ilustrar esto que expresamos, veamos el argumento que el Secretario de Justicia utiliza a las páginas 16 y 17 de su contestación, donde cita el Canon 19 de Etica Profesional para abundar en su defensa.

El Canon 19 lee como sigue:

"El abogado debe mantener a su cliente siempre informado de todo asunto inportante que surja en el desarrollo del caso que le ha sido encomendado."

Alega el Secretario que la Moción de Sentencia Sumaria que puede dar lugar a una Sentencia en contra de los demandados (sus clientes) no es importante. Si lo que puede dar lugar a la sentencia en contra de una parte no es importante entonces, ¿qué es importante en un pleito? El

propio Secretario de Justicia nos da la razón al citar el caso de *Colón Prieto* vs. *G[é]igel* [115 D.P.R. 232 (1984)] (Sentencia del 29 de marzo de 1985), en la cual el Secretario de Justicia cita el siguiente párrafo:

"Este deber cuya génesis es el *'principio de información'* significa que el abogado, además de representar un cliente con fidelidad, lealtad y diligencia, debe siempre mantenerlo informado de todo asunto importante que siga en el desarrollo del caso, cuya atención le ha sido encomendada. *In re Cardona Vázquez*, 108 DPR 6, 18 (1979).

["]No es necesario mucho esfuerzo mental para aceptar que una sentencia de archivo —o en sus méritos— y que pone fin parcial o adjudica totalmente la causa de acción y derecho, claramente cae entre los asuntos a ser informados inmediatamente por el abogado al cliente." 84 J.T.S., a la pág. 3524.

Precisamente el texto del segundo párrafo citado por el Secretario de Justicia es de aplicación a este caso ya que no hace falta ningún "esfuerzo mental para aceptar que ... " una Sentencia Sumaria " ... que pone fin parcial ... a la causa de acción y derecho, claramente cae entre los asuntos a ser informados inmediatamente por el abogado al cliente". (Véase cita del Secretario de Justicia 84 J.T.S., a la pág. 3524).

Más adelante dice el Secretario de Justicia al final de la página 17: "Esta es la médula del principio que requiere mantener informado al cliente: que el cliente pueda tomar las decisiones de forma inteligente fundado en la información necesaria para ello".

En este caso el Secretario de Justicia falló totalmente, por su temeridad y su negligencia, en ofrecernos a sus clientes la información necesaria de que existía una Moción de Sentencia Sumaria pendiente, habernos enviado copia de esa Moción, así como también habernos informado con copia de su Moción sobre paralización por posibles conflictos de intereses, así como también con copia de su opinión emitida el 18 [*sic*] de marzo de 1985, para que así pudiéramos haber tomado " ... las decisiones de forma inteligente fundado en la información necesaria para ello".

El Secretario de Justicia no solamente dejó de ejercer sus mejores esfuerzos para mantenernos razonablemente

informados sobre el status del asunto, según los principios enumerados a la página 18 de su contestación, sino que omitió, en forma intencional o negligente, el mantenernos informados.

Es increíble que el Secretario de Justicia haga la aseveración que en el último párrafo de la página 18 hace en su contestación.

"En el caso de *Olga Iris Mateo y Otros* vs. *Carlos Romero Barceló* era innecesario que el Secretario de Justicia le notificara al licenciado Romero Barceló que se había presentado una solicitud de sentencia sumaria. Esto es un aspecto de derecho en el cual el cliente no tiene que tomar decisión alguna."

Es difícil concebir cómo todo un Secretario de Justicia puede hacer una aseveración como la que hemos citado. Una Moción de Sentencia Sumaria que puede disponer de la parte fundamental del caso, sí es importante y sí es necesaria que se le notifique al cliente. Más aún, es necesario, cuando existe un conflicto de intereses y el cliente debe buscar o designar otro abogado que lo defienda a tiempo para hacer las alegaciones que corresponda en contestación a la Petición de Sentencia Sumaria.

*Esta actitud temeraria o expresión de ignorancia del Secretario de Justicia es de por sí suficiente para que el Honorable Tribunal tome acción disciplinaria contra el Secretario.*

*Pero no satisfecho el Secretario con las alegaciones frívolas y las admisiones que hace en su contestación a la querella, pretende echarle la culpa a sus subalternos, quienes en este caso han actuado bajo sus instrucciones. De los propios autos surge que el Secretario de Justicia personalmente ha estado envuelto en las decisiones que se han tomado en todo este asunto en lo relacionado con la representación de los demandados y la notificación o información adecuada a los clientes.*

De la lectura total de la contestación del Secretario y de la actitud que se refleja a través de todo su escrito se recibe una impresión de que el Lic. Héctor Rivera Cruz se ve a sí mismo, como que está por encima de la Ley y que él no puede incurrir en ninguna violación de ley, porque él es el Secretario de Justicia. *Su posición parece ser que si alguna responsabilidad o violaciones a los Cánones de Ética hay en este asunto, los responsables son sus subalternos y no él.*

*Parte de los señalamientos de la querella han sido admitid[o]s por la parte querellada. Por todo ello, la actuación del Secretario de Justicia en el asunto ante este Honorable Tribunal, merece ser objeto de acción disciplinaria.*

La temeridad y la negligencia, o la intención maliciosa, de no dar defensa adecuada al querellante en este y otros casos, aún persiste. Con fecha 10 de diciembre de 1985 le envié una carta al Secretario de Justicia, con copia de mi carta del 11 de febrero de 1985 (Véase Anexo de la Querella), en la cual le solicitaba una vez más que me enviara una relación de los casos en que había sido demandado en mi carácter de Gobernador, tanto en mi responsabilidad oficial como la personal. (Incluyo copia de esa carta como Anexo "A".)

Todavía, once (11) meses después de haber solicitado por primera vez esa lista el 11 de febrero de 1985, y un mes después de la última carta del 10 de diciembre de 1985, no he recibido esa información.

En vista de lo anteriormente expuesto, nos reiteramos en la solicitud que a este Honorable Tribunal hiciéramos en nuestra Querella de fecha 27 de noviembre de 1985, o en su defecto, *y en vista de las admisiones que el propio Secretario de Justicia ha hecho, que claramente demuestran que ha actuado en forma contraria a los intereses de sus clientes en violación a los Cánones de Etica Profesional, proceda a tomar la acción disciplinaria que este Honorable Tribunal estime adecuadas.* (Énfasis suplido.) Carta de 8 de enero de 1986, págs. 1-8.

El 14 de enero de 1986, el Lic. Carlos Romero Barceló acompañó copia de la Carta Circular Núm. 2006 de 15 de marzo de 1985, aprobada por el Secretario de Justicia Héctor Rivera Cruz, que en lo atinente adopta la siguiente norma preexistente desde hace varias décadas en el Departamento de Justicia:

III— *Casos en los cuales está impedido de emitir opiniones el Secretario de Justicia*

*El Secretario de Justicia no dictaminará en relación con los siguientes casos:*

2. *Cuestiones que estén sometidas a los tribunales de justicia, casos [sub júdice]*. Esta norma responde al objeto de mantener deslindada la gestión de la Rama Ejecutiva y de la Rama Judicial y así evitar conflictos entre ambas ramas. Cuando un organismo de gobierno somete una cuestión esencialmente judicial, a ser resuelta finalmente por los tribunales de justicia, *el Secretario de Justicia no accederá a la solicitud de opinión*.

.      .      .      .      .      .      .      .

8. Cuestiones previamente decididas por el funcionario o jefe de departamento que solicita la consulta, *así como tampoco en casos de actuaciones consumadas de los departamentos y agencias*. En casos de esta índole, solamente dictaminaremos cuando la actuación administrativa haya sido cuestionada por algún funcionario con autoridad legal para ello, como por ejemplo, el Contralor de Puerto Rico. (Énfasis suplido.) Carta Circular Núm. 2006 de 15 de marzo de 1985, *exhibit* 6, págs. 3-4.

Con vista a estas normas, el Lic. Carlos Romero Barceló señaló:

Como puede verse hay dos razones aplicables a este caso por las cuales el Secretario de Justicia estaba impedido de emitir opinión alguna:
1. La cuestión o controversia sobre el nombramiento de los gerentes escolares estaba sometida a un Tribunal de Justicia.
2. La cuestión objeto de la opinión emitida se refería a unas actuaciones ya consumadas por el Departamento de Instrucción.

¿Qué explicación puede haber para que el Secretario de Justicia violara sus propias normas y sus propios criterios que no sea la de favorecer a los demandantes en el caso? La Secretaria de Instrucción y el Sub-Secretario de Instrucción, demandante original en el caso de *Olga Iris Mateo y Otros* vs. *Carlos Romero Barceló y Otros*, al pasar a formar parte del Departamento de Instrucción como Secretaria, ella, y subsecretario, él, habían estado ayudando en las gestiones del pleito a favor de los demandantes y tenían que saber que una opinión del Secretario de Justicia, que sostuviera la posición de los demandantes, produciría una sentencia a su favor. *Es*

*dificil creer o aceptar que el Secretario de Justicia no estaba
al tanto de ello también. ¿Se atrevería el Secretario de Justicia
a jurar lo contrario y a someterse a un interrogatorio?*

Los hechos anteriores dan lugar, a cuando menos, sospechas
de una seria colusión. Si no hubo colusión, por lo menos hay
una abrumadora apariencia de ello.

Este Honorable Tribunal no debe permitir que la actuación
del Secretario de Justicia permanezca impune sin imposición
de las sanciones disciplinarias correspondientes. (Énfasis
suplido.)

El Secretario de Justicia Héctor Rivera Cruz *nunca
contestó* estos dos escritos del Lic. Carlos Romero Barceló.
En reconsideración nos dice que no lo hizo pues entendió
que no había imputaciones claras a su conducta. Por tal
razón optó por sólo defender al Departamento de Justicia
y al Secretario institucionalmente. El argumento no
convence. Los documentos hablan por sí solos.

*Primera resolución del Tribunal sobre las quejas*

Hemos visto cómo el Lic. Héctor Rivera Cruz nos
argumentó en su *contestación* original la improcedencia y
carencia de méritos de las quejas. Además nos pidió su
eliminación del Registro de Quejas o su archivo y sobre-
seimiento. Aun así, el 13 de mayo de 1986 le notificamos
la siguiente Resolución:

*Examinada la queja* presentada por el Lic. Carlos Romero
Barceló contra el Secretario de Justicia, Lic. Héctor Rivera
Cruz, *la comparecencia de este último y los documentos y
anejos respectivos, el Tribunal entiende que no procede su
desestimación, y que el asunto amerita estudio y resolución
en sus méritos por este Tribunal.*

En consecuencia, se dictan los siguientes pronunciamientos:

(a) Se concede al Lic. Rivera Cruz un término a vencer el
30 de mayo de 1986 para que proceda a *replicar*, si lo estima
conveniente, las comunicaciones del 14 de enero y 22 de abril
de 1986 del Lic. Romero Barceló y la del 16 de enero de 1986

suscrita por Carlos Rafael Torres Reyes y Eduardo Carrasquillo Nieves.

(b) A partir del 30 de mayo se concede a las partes veinte (20) días simultáneos para, *por vía de alegato, ampliar y argumentar sus respectivas posiciones. Transcurridos los términos antes mencionados el caso quedará sometido para su dictamen final.* (Énfasis suplido.) Resolución de 13 de mayo de 1986.

Los documentos antes transcritos reflejan concluyentemente: (1) los términos claros de las imputaciones específicas, y sin evasivas, de las quejas del Lic. Carlos Romero Barceló y los Gerentes Escolares, incluyendo alegaciones de que el Secretario de Justicia Héctor Rivera Cruz "tuvo que" o "debió" haberse percatado del conflicto de intereses originado por su opinión; (2) su contestación, planteamientos y hechos expuestos bajo juramento y documentalmente, en particular su solicitud de archivo en esa etapa; (3) la negativa *unánime* del Tribunal a archivar las quejas; (4) la decisión de resolverlas en sus méritos de manera final, y (5) la concesión de términos para alegatos, que una vez vencidos conllevaría que el caso quedó "sometido para su dictamen *final*".

Ciertamente este trasfondo procesal es contrario y desvanece todo argumento en reconsideración sobre falta de debido proceso de ley. No podemos suscribir la tesis zigzagueante de que la contestación del Lic. Héctor Rivera Cruz fue formulada "desde el punto de vista institucional, [que] contesta *teóricamente* las imputaciones que el querellante le hace al Departamento". Nada hay en que apuntalar la validez de esa impresión. Desde su primer escrito, el Lic. Héctor Rivera Cruz, nos pidió *sin éxito* el archivo de las quejas. Conocía los términos de las mismas. Como abogado tenía que saber que nuestra resolución de 13 de mayo de 1986 evidenciaba un claro rechazo a sus planteamientos y que las quejas iban a ser adjudicadas en la órbita de jurisdicción disciplinaria "en sus méritos".

Curiosamente, nunca pidió aclaración al respecto. Su contención no es sólo tardía sino inmeritoria.

El trámite habido se ajustó rigurosamente a lo dispuesto en nuestro Reglamento, en particular la Regla 13(e), *supra*. Ésta dispone que una vez recibida la contestación a las alegaciones de la queja, el Tribunal "[p]odrá igualmente *imponer las sanciones que correspondan sin necesidad de trámites ulteriores cuando de la propia contestación surjan hechos que justifiquen la imposición de sanciones*". 4 L.P.R.A. Ap. I-A. El Lic. Héctor Rivera Cruz no cuestiona persuasivamente la validez de este trámite. En su reconsideración simplemente descansa en la conclusión de que el tribunal estaba impedido de utilizar este trámite, pues a su juicio, su "contestación a la queja controvertía las alegaciones fundamentales que contenía la queja sin juramentar presentada por el licenciado Romero Barceló". Moción de Reconsideración de 26 de mayo de 1987, pág. 27. Ya hemos demostrado lo erróneo de esta conclusión.

En resumen, ante el rechazo unánime del Tribunal a su solicitud de archivar las quejas, no podemos suscribir los argumentos del Secretario de Justicia Héctor Rivera Cruz ni justificar su tesis de pasividad e incomprensión procesal.

*Segunda Resolución del Tribunal*

Pero hay más. Después de nuestra primera resolución, el Secretario de Justicia Héctor Rivera Cruz compareció el 30 de mayo de 1986 y expuso:

> Aunque es conveniente que elaboremos en algunos aspectos del derecho envuelto en esta *querella*, particularmente respecto al significado y funcionamiento de la Ley Núm. 9, entendemos que esto es más apropiado incluirlo en un *alegato*. A tales efectos, habremos de radicar el alegato a que se refiere este Honorable Tribunal en su Resolución del 13 de mayo, dentro del término de 20 días que se concede en dicha orden. (Énfasis suplido.) Carta de 30 de mayo de 1986, pág. 2.

Subsiguientemente, el 20 de mayo, en carta dirigida al Juez Presidente Señor Pons Núñez, indicó:

El 13 de mayo de 1986, este Honorable Tribunal emitió una Resolución en la que *invitó* al Secretario de Justicia a replicar a varias comunicaciones dirigidas a este Honorable Foro por el Lcdo. Carlos Romero Barceló *en las cuales este último le imputa al Secretario haber incurrido en conducta reñida con los cánones de ética profesional.* El Secretario ha comparecido anteriormente ante este Honorable Foro *y ha contestado las imputaciones que le hace el Lcdo. Carlos Romero Barceló.* Entiende el Secretario que *las comparecencias anteriores son suficientes para refutar totalmente las imputaciones carentes de mérito alguno que le hace el licenciado Romero Barceló.* Sin embargo, debido a que estas imputaciones se fundan en gran medida en la falta de conocimiento que tiene el quejoso sobre las enmiendas que le hizo a la Ley de Reclamaciones y Demandas contra el Estado, la Ley Núm. 9 del 26 de noviembre de 1985, el Secretario entiende que es necesario discutir brevemente el alcance de dicha legislación. Carta de 20 de junio de 1986, pág. 1.

En vista de los términos de esta carta, el 5 de septiembre de 1986 el Tribunal —por conducto de una Sala integrada por el Juez Presidente Señor Pons Núñez y los Jueces Asociados Señores Negrón García y Alonso Alonso— dispuso lo siguiente:

Considerada la comunicación suscrita por el Secretario de Justicia, Lic. Rivera Cruz, y dirigida al Juez Presidente, señor Pons Núñez, como una moción de prórroga, se le concede un término a vencer el 19 de septiembre para ampliar su comparecencia en cuanto al aspecto del Servicio de Opiniones que provee el Secretario de Justicia.

*Se le instruye al Lic. Rivera Cruz,* que en lo sucesivo, conforme a nuestra Resolución del 13 de mayo de 1986 — *fecha en que el Tribunal denegó la desestimación por él solicitada y asumió jurisdicción disciplinaria en el asunto—* todo escrito debe ser dirigido al Tribunal en Pleno y el mismo debe cumplir, en cuanto a formato, copias y demás

particulares, con el Reglamento del Tribunal. (Énfasis suplido.) Resolución de 5 de septiembre de 1986.

Esta resolución, unida a los previos trámites, comparecencias y planteamientos del Secretario de Justicia —según expuesto— es incompatible con su posición de que desconocía que se le imputaba un conflicto de intereses y que ello infringió el debido proceso de ley. Todo lo contrario. Los autos demuestran que desde sus inicios fue debidamente notificado de que el Tribunal —al negarse a desestimar las quejas— las estimaba meritorias; fue advertido que serían resueltas en sus méritos, y que se había asumido jurisdicción disciplinaria. Bajo ningún supuesto válido cabe su interpretación. De las quejas, su contestación, documentos anejos y demás escritos surgieron suficientes hechos justificativos de la sanción "sin necesidad de trámites ulteriores" al amparo de la Regla 13(e), *supra*.

## IV

Despejada toda duda en cuanto a la validez y suficiencia del trámite y debido proceso de ley, concentremos en el argumento de que el Secretario de Justicia no incurrió en un conflicto de intereses.

Su señalamiento básico descansa en la hipótesis de que desconocía la existencia del caso Civil Núm. PE-82-970 contra el Lic. Carlos Romero Barceló, la Sra. María Socorro Lacot y los Gerentes Escolares; no fue advertido de ello por sus subalternos principales y asesores especiales antes de emitir su opinión de 15 de marzo de 1985; tuvo conocimiento del conflicto después del 14 de mayo de 1985, e inmediatamente instruyó para que se adoptaran las medidas de rigor para remediar la situación. Estas afirmaciones las hace bajo juramento, y además nos acompaña las declaraciones juradas de otros funcionarios y abogados que intervinieron en el proceso judicial y trámite administrativo.

A los fines de esta reconsideración, hemos de hacer uso de este "récord completo" y partir del supuesto de que el Lic. Héctor Rivera Cruz no tuvo conocimiento del caso judicial aludido de los Gerentes Escolares antes del 15 de marzo de 1985 cuando emitió su opinión. Aun así, ello no le exonera. ·

La razón de decidir de nuestro dictamen se apuntaló en varias premisas principales, entre ellas el conocimiento presuntivo del Secretario de Justicia Héctor Rivera Cruz. Sin embargo, no fue la única. Examinémoslas.

... [I]ndependientemente de las variantes que produzca, en incumbentes y enfoques, la dinámica operacional de nuestra democracia en la Rama Ejecutiva —como resultado de un cambio de administración post eleccionario— las obligaciones principales impuestas por la Constitución y la legislación al cargo de Secretario de Justicia, no varían. Y, aunque posee amplia discreción, la misma no es absoluta. Aun cuando su nombramiento lo origina el Gobernador, con el consejo y consentimiento del Senado, al jurar y tomar posesión del cargo, su fidelidad y comportamiento están afectados y regulados por la Constitución, innumerables disposiciones legales y por el modelo ético que corresponde al ideal de buen abogado "expresado en el preámbulo" del Código de Ética Profesional, 4 L.P.R.A. Ap. IX. Criterio General Canon 1, *in fine*. Como tal, le aplican incuestionablemente los principios deontológicos que regulan la profesión de abogado, con las modificaciones aceptables y cognoscibles resultantes de las peculiaridades inherentes que conlleva esa compleja gestión pública.

Lo expuesto no significa que un Secretario de Justicia indefectiblemente esté sujeto a procedimientos disciplinarios *por violaciones éticas atribuibles única y directamente a otros abogados del Departamento.* En un cargo tan difícil y complejo, el abanico de posibilidades de error de juicio es inmenso. Las probabilidades de incurrir en conflictos, de buena fe y sin intención, es una premisa aceptable. Thompson, Gouth & Wallace, *Conflicts of Interest and the States Attorneys General,* 15 Washburn L.J. 15, 16 (1976).

En este sentido, sin que ello signifique la exclusión y evaluación de otros factores, o abdicar automáticamente la jurisdicción disciplinaria, este foro, de ordinario, se abstendrá prudencialmente de asumir y ejercerla en quejas o planteamientos en que de su faz: (1) el promovente no justifique satisfactoriamente un interés legítimo ético y perjuicio real directo; (2) el asunto, aunque de carácter ético, sea prematuro; (3) los hechos no estén debidamente documentados o sustanciados, o (4) no sean materia *ético-adjudicable* por corresponder propiamente al debate del Poder Legislativo o Ejecutivo, o pertenecer a la arena de la política partidista.

En reconocimiento a estas realidades, a las múltiples funciones ejecutivas y administrativas, la pluralidad de abogados, los numerosos casos judiciales y consultas, y otros factores, cada situación planteada del género ético que nos ocupa, requerirá una cuidadosa reflexión sobre si asumimos jurisdicción disciplinaria. Además requerirá oportunamente una meticulosa y ponderada depuración de los hechos para fines de fijar *si ha habido infracción a algún canon y sobre quién realmente recae responsabilidad.*

. . . . . . . .

. . . La expresión "sub júdice" simplemente significa "pendiente de resolución judicial". F. Gómez de Liaño, *Diccionario Jurídico*, Salamanca, Ed. Gráficas Cervantes, 1979, pág. 291. [La] opinión [del Secretario de Justicia] de 15 de marzo de 1985 versó indiscutiblemente sobre la legalidad del puesto de Gerente Escolar. Distinto a su criterio, dicha opinión se proyectó sobre la controversia pendiente en el caso Civil Núm. PE-82-970 en dos vertientes: sobre los demandantes, reconociéndoles su reclamo de ilegalidad, y sobre los demandados, negándosela. Dudamos que pueda existir una situación más clara en que un Secretario de Justicia emite una opinión sobre un caso sub júdice.

En virtud de esa opinión es que incurrió en un claro conflicto de intereses. *No actuó prudente y diligentemente, acorde con las circunstancias impuestas por el caso Civil Núm. PE-82-970 y la representación legal simultánea que ostentaba.* Examinemos detenidamente sus argumentos.

El primero es erróneo. Se basa en la premisa de que dicho conflicto "ocurrió" cuando los demandantes Mateo *et al.*, presentaron la solicitud de sentencia sumaria. La cronología es equivocada. Desde el instante en que acogió la consulta de la Secretaria de Instrucción, Sra. Awilda Aponte Roque, y arribó a una conclusión adversa a los intereses de los codemandados los Gerentes Escolares, el licenciado Romero Barceló y la doctora Lacot —y a tal efecto suscribió la opinión el 15 de marzo de 1985— *surgió indubitadamente un conflicto de intereses. Los términos inequívocos en que estaba redactada, sus directrices y resultados no permiten otra conclusión.*

En el segundo argumento, el Secretario de Justicia intenta establecer a priori un deslinde entre sus funciones como abogado de una parte en un pleito judicial —a través de la División de Litigios— y su misión de atender y opinar, por mediación de la División de Opiniones, las consultas originadas en las diversas agencias y dependencias gubernamentales.

Reconocemos que existen situaciones legítimas, *que debido a la naturaleza confidencial del asunto* o investigación — *Santiago v. Bobb y El Mundo, Inc.*, 117 D.P.R. 153 (1986); *Soto v. Srio. de Justicia*, 112 D.P.R. 477, 495 (1982)— no es permisible, recomendable, ni exigible, que determinada información esté internamente accesible y *disponible* a las distintas divisiones del Departamento de Justicia, incluyendo algunos abogados y demás funcionarios. En atención a ellas, es también comprensible que el Secretario de Justicia, en determinados momentos, no conozca detalles e información al respecto. *Sería absurdo, y físicamente imposible, exigirle que diariamente se reuniera con todos los fiscales, abogados y demás subalternos para conocer los detalles de sus labores.* En tales circunstancias, el acceso restringido a esa información en particular —y sus efectos sobre casos civiles investigaciones, casos criminales y opiniones en consulta del Secretario de Justicia— pueden explicar el que, en un momento dado, se produzcan *bona fide* posiciones antagónicas o de intereses en conflicto, que una vez aclaradas, despejen toda duda de impropiedad ética.

*Por tal razón, no podemos tajantemente aceptar —con carácter absoluto e ilimitado— la dicotomía de abogado-asesor.*

*Salvo las situaciones consideradas, como regla general, para fines éticos y como titular de Justicia, el deber es uno e infraccionable. El principio deontológico en que se apuntala la prohibición de intereses encontrados, no puede quedar diluido ni inmerso en la burocracia administrativa o en la pluralidad de abogados y casos del Departamento. No concebimos que el Secretario de Justicia puede actuar aisladamente en un compartimiento sellado, ajeno o distanciado de los asuntos y decisiones de importancia del Departamento. Fuera de los detalles rutinarios —sobre los cuales es imposible imputarle conocimiento— en los asuntos de relieve y trascendencia le corresponde ordenar satisfactoriamente las labores y obligaciones internas, y diseñar mecanismos para mantenerse informado de los mismos.* Véase *Pueblo* v. *Ayala Rodríguez*, 116 D.P.R. 382 (1985).

No es oponible, por ser inaplicable en la situación planteada, su proposición de que no se le puede exigir al Departamento de Justicia que contrate los servicios profesionales privados "en cada situación donde pueda surgir una apariencia de conflicto de intereses", pues a su juicio ello atentaría contra la discreción conferida por la Ley Núm. 9, *supra*, y afectaría adversamente la situación fiscal del Estado. No podemos suscribir esta proposición tan categóricamente. Asumiéndola como correcta, aun así, su proceder en el caso de autos no ha sido debidamente justificado. Aquí no se trataba de una mera *apariencia. Conforme sus propias normas, el Secretario de Justicia Héctor Rivera Cruz debió abstenerse de considerar la consulta de la Secretaria de Instrucción, Sra. Awilda Aponte Roque. No lo hizo. Decidió acogerla.*

Al partir de la hipótesis de que en sus inicios la consulta fue canalizada rutinaria y directamente a la División de Opiniones, sin su intervención, y por ende, la desconocía, ciertamente en la etapa ulterior que la suscribió, advino en pleno conocimiento. Al hacerlo, repetimos, surgió un evidente e insuperable conflicto de intereses. El conflicto lo generó él y no sus representados originales, los codemandados Gerentes Escolares, el Lic. Carlos Romero Barceló y la Dra. María Socorro Lacot. *Desde ese instante, como Secretario de Justicia y autor de la misma, le correspondía adoptar las medidas*

*necesarias para subsanar la situación creada.* Primeramente, pudo comunicarles —como demandados potencialmente afectados— su intención de suscribir una opinión legal contraria a sus intereses, brindándoles desde ese instante la oportunidad de seleccionar una nueva representación legal, separada e independiente del Departamento. *Como otra alternativa, una vez suscrita la opinión y conocido su impacto y trascendencia en el caso Civil Núm. PE-82-970, debió notificarla inmediatamente, informándoles que por dicha razón el Departamento no podía seguir representándolos —como tampoco a los restantes demandados— y que podían seleccionar un abogado privado a ser contratado por el Departamento de Justicia.* No siguió ninguna de estas opciones. (Énfasis suplido.) *In re Secretario de Justicia,* 118 D.P.R. 827, 849–850, 857–860 (1987).

Reiteramos esos pronunciamientos. A tenor con los mismos, difícilmente podemos sostener que el asunto era de naturaleza confidencial del cual en las reuniones que se admiten celebradas no pudo informarse. Por el contrario, la opinión giró en torno a un asunto público de carácter político-partidista que había sido objeto de mención en el Programa del Partido Popular Democrático y el Gobernador de Puerto Rico, Sr. Rafael Hernández Colón en su Mensaje Anual a la Asamblea Legislativa en febrero de 1985. No era un asunto rutinario sin importancia. Estaba además involucrado un ex gobernador.

Sin agotar el análisis, tampoco podemos suscribir la división que se intenta establecer de que no existió conflicto de intereses basada en que el Secretario de Justicia no actuó personal sino institucionalmente. Precisamente una "de las grandes fallas en la administración pública contemporánea es la cont[i]nua dilución de la responsabilidad de los funcionarios públicos".

Como dijéramos anteriormente, en esta opinión concurrente, a la pág. 360, sostener la postura del Lic. Héctor Rivera Cruz implicaría aceptar "que como Secretario de Justicia, en pocas horas, su mano derecha no tiene que

conocer lo que hace la izquierda y puede descargar ligera y superficialmente —sin consecuencias éticas— las responsabilidades de su cargo. No podríamos refrendar esa posición. Si aceptamos que nadie le notificó del pleito PE-82-970, aun así, ¿cómo es posible que el mismo 15 de marzo de 1985, cuando suscribió la opinión que decretaba la nulidad de los cargos de Gerentes Escolares, adoptó las normas de abstención en casos sub júdice, y *sua sponte* no inquirió si éstas afectaban las opiniones emitidas ese día? ¿No le preocupó esa posibilidad? Independientemente de su desconocimiento sobre el pleito PE-82-970, no hacerlo demostró una pasividad que configura un juicio pobre y poco prudente. Incomprensiblemente no desplegó las diligencias necesarias para que desde ese día, 15 de marzo, tuviesen virtualidad sus normas de autoabstención en casos sub júdice. Ello hubiese evitado todo este enojoso trámite. Tal conducta fue la causa directa que generó el conflicto de intereses. Esa omisión no es transferible éticamente a sus subalternos o asesores especiales. Tampoco justifica no haber mantenido debidamente informados a los Gerentes Escolares y al Lic. Carlos Romero Barceló de los trámites importantes del caso".

Sobre el conflicto de intereses, valga aclarar que subsistiría la responsabilidad ética del Lic. Héctor Rivera Cruz aunque no existiese por escrito la norma de autoabstención. Con o sin norma especial escrita, el Canon 21 del Código de Ética Profesional impone a todo abogado, incluyendo al Secretario de Justicia la obligación de evitar incurrir en conflictos de intereses de este tipo. En otras palabras, lo verdaderamente censurable es haber emitido una opinión conflictiva mientras estaba un caso sub júdice y ostentaba la representación legal de los Gerentes Escolares, el Lic. Carlos Romero Barceló y la Dra. María Socorro Lacot. No es excusa, pues, que ignorara esa representación legal. Repetimos, estaba en la obligación de inquirir sobre el particular y adoptar las medidas

conducentes a evitarlo. Obviamente las adoptadas el 15 de marzo —si algunas— fueron insuficientes.

La sanción impuesta fue objeto luego de una ponderada reflexión colegiada. Tomó en cuenta diversos factores. Favoreció al Lic. Héctor Rivera Cruz nuestra percepción de unos "claros indicios de que su conducta, en algunos extremos, se fundamentó en juicios erróneos e interpretaciones equivocadas sobre el ejercicio de su discreción bajo la Ley Núm. 9 de 26 de noviembre de 1975, según enmendada, 32 L.P.R.A. sec. 3085 *et seq.*, sus obligaciones legales y las limitaciones en la dimensión ética dimanantes de su compleja función dual como principal abogado-asesor del ejecutivo. *También aflora en este incidente una aparente falla en los canales internos de comunicación, o una inadecuada coordinación, entre las distintas divisiones del Departamento*".

## V

Una nota final. En reconsideración el Lic. Héctor Rivera Cruz persevera en su proposición de que para fines éticos debemos fraccionar su persona y establecer el binomio abogado-Secretario de Justicia. Otra vez rechazamos esa visión.[5] En último análisis su condición de abogado es

---

[5] Esta visión ética del cargo de Secretario de Justicia no es exclusiva del Tribunal. Desde el 12 de diciembre de 1984 la *Comisión de Nombramientos del Senado de Puerto Rico* rindió un informe en torno al entonces incumbente interino Lic. Nelson Martínez Acosta, que en lo pertinente dispone:

"Al analizar la conducta del [Secretario de Justicia] lo primero que tenemos que tener presente es que se trata, no sólo de un abogado del gobierno que ejerce funciones públicas, sino que estamos examinando la conducta del abogado del Pueblo de Puerto Rico, del Secretario de Justicia. Esto significa que es una persona con una gran autoridad que además tiene a su disposición los vastos recursos del gobierno. *Por consiguiente y de estas mismas condiciones emanan una serie de responsabilidades éticas adicionales en el desempeño de sus funciones como abogado. Estas son responsabilidades que surgen por razón del cargo que ocupa y la función que ejerce en la sociedad, son responsabilidades que no comparten los abogados en la práctica privada de la profesión.* Sobre este particular resultan muy

inseparable del cargo de Secretario de Justicia y constituye la cualidad esencial e inherente que le permite ser el

apropiadas las palabras de Robert H. Jackson cuando era Secretario de Justicia de los Estados Unidos:

'Rights, privileges and inmunities of our citizens have only that life which is given them by those so with position of authority. Fahy, "Special Ethical Problems of Counsel for Government", 33 Fed. B.J. 331, 337 (1978).'

"También hay que tomar en consideración que por la posición que ocupa, las actuaciones del Secretario de Justicia, van a tener una gran influencia sobre la fe que tenga el Pueblo en el sistema de impartir justicia, o la mantendrá y avivará o la destruirá o menoscabará. En gran medida, este funcionario es uno de los custodios más importantes de esa fe institucional y como tal tiene el ineludible deber de preservarla y evitar que por sus actuaciones se menoscabe.

"El Preámbulo del Código de Etica Profesional, 4 L.P.R.A. Ap. IX, le impone a todo abogado el deber de velar precisamente por la consecución y preservación de la *fe del Pueblo en la justicia.* También se le exige que labore para 'lograr la existencia de un orden jurídico íntegro y eficaz' y que evite 'a[u]n la apariencia de conducta impropia.' *Estos deberes adquieren una dimensión mayor cuando se trata del Secretario de Justicia, el abogado del Pueblo de Puerto Rico.*

"Al aplicar los Cánones de Etica Profesional a un abogado del gobierno, en este caso en particular al abogado del Pueblo de Puerto Rico, tenemos que comenzar por distinguir este tipo de abogado de aquel que se dedica a la práctica privada de la profesión legal. Tenemos que recordar que la fuente de las reglas ético-legales es, en la última instancia, la relación abogado-cliente ya que el deber primordial de un abogado es servir a su cliente y proteger sus derechos. Esta lealtad hacia el cliente sólo queda modificada por el respeto que todo abogado tiene que tener al Tribunal. En otras palabras, la aplicación de los Cánones de Etica Profesional a un abogado del gobierno, *especialmente al que ocupa un cargo tan importante como el de Secretario de Justicia, entraña un reajuste o cambio de prioridades.* También conlleva el que se tenga presente que '[l]a enumeración de deberes específicos [del Código de Ética Profesional] no deja de hacer mandatorias otras obligaciones no señaladas en este cuerpo de normas y que *son inherentes a la responsabilidad social y profesional de los juristas y a la conducta moral que se espera de todo miembro de la profesión.'* [Énfasis en original nuestro.]

"Examinemos ahora el rol del Secretario de Justicia y cómo éste afecta la aplicación de los Cánones. En el caso de este funcionario al igual que en el de los fiscales, él es en realidad su propio cliente, puesto que es él quien determina y decide sobre los derechos del Pueblo que se han de implementar y la forma de hacerlo. También tiene a su cargo la mayor parte de la litigación civil del Estado y toda la litigación criminal. Ante esta situación tan particular, ¿cuál debería ser la responsabilidad étic[o]-profesional de este funcionario como abogado? *Se ha expresado y nosotros estamos de acuerdo, que la norma principal ética de este tipo de abogado tiene que ser el desinterés personal y la objetividad en el descargo de sus funciones como abogado.* Por lo tanto, su primer deber es

abogado-asesor principal del Estado. Como tal, la misión del abogado y sus obligaciones deontológicas no se agotan al jurar como Secretario de Justicia.

Lo expuesto nos mueve a rechazar la reconsideración. Al igual que ayer, "[d]escargamos esta misión con absoluta ecuanimidad y con exclusión '[de] toda apariencia de que [somos] susceptible[s] de actuar a base de influencias de personas, grupos o partidos, o de ser influido[s] por el clamor público, por consideraciones de popularidad o notoriedad, o por motivaciones impropias'. Canon XI de Ética Judicial, 4 L.P.R.A. Ap. IV-A. Sobre todo, conscientes de que somos depositarios '[de] la fe de un pueblo en la justicia', y de la importancia que representa de inalterablemente actuar — ante reclamos legítimos contra cualesquiera funcionarios de los Poderes Ejecutivo y Legislativo— como 'factor de equilibrio en la estructura gubernamental de nuestro sistema de vida democrática'. Cánones I y XIII de Ética Judicial, *supra*". *In re Secretario de Justicia*, supra, pág. 868.

—O—

Voto particular del Juez Presidente Señor Pons Núñez al cual se une el Juez Asociado Señor Alonso Alonso.

Por las razones expuestas en mi opinión disidente de 11 de mayo de 1987, reconsideraría la sentencia emitida en esa fecha a los fines de eliminar la censura y amonestación decretada contra el Lic. Héctor Rivera Cruz. Las declaraciones juradas que ha presentado el señor Secretario de Justicia avalan mi posición de entonces de que la

---

y tiene que ser el administrar la ley de forma justa y velar por que al administrarla no se violenten los derechos de los demás. (Véase *Legal Ethics: The Law of Professional Responsibility*, L. Ray Patterson, Pt. 111-3, 111-4.)" (Énfasis suplido.)

participación personal y activa del señor Secretario de Justicia era una conjetura. Resulta altamente peligroso imponer responsabilidad ética en ausencia de esa participación activa y personal. Las consecuencias de ello para la práctica grupal de las profesiones puede ser devastadora.

La reconsideración sería lo que reflejaría con fidelidad la realidad imperante en este Tribunal. Independientemente de las consideraciones técnico-procesales que existan, la realidad es que la censura y amonestación al Lic. Héctor Rivera Cruz cuenta en estos momentos en este Tribunal con sólo dos votos. A todos los efectos prácticos ha quedado sin efecto, pues no cuenta ni con la mayoría del Tribunal ni con la mayoría de los Señores Jueces participantes en el caso.

Que este Tribunal permita por sus expresiones que se cree la impresión de que se mantiene una censura y amonestación contra un abogado cuando en la realidad no hay los votos para ello, con toda la carga y efectos perjudiciales para el abogado personalmente y para su carrera profesional que ello acarrea, hiere mi visión de lo justo. Sancionar por empate no es justo.

—O—

Opinión particular emitida en reconsideración por el Juez Asociado Señor Rebollo López.

## I

Mediante opinión y sentencia de 11 de mayo de 1987 una mayoría de los jueces de este Tribunal que participaron en el recurso de epígrafe resolvieron que el Señor Secretario de Justicia de Puerto Rico, Lic. Héctor Rivera Cruz, había infringido el Canon 21 de Ética Profesional, 4 L.P.R.A. Ap. IX, " ... al suscribir el 15 de marzo de 1985 la opinión

de que el puesto de Gerente Escolar, tal como fue creado, clasificado e implantado era ilegal y contrario a las leyes y reglamentos aplicables, y que procedía la separación de aquellas personas que lo ocupaban ... ". *In re Secretario de Justicia,* 118 D.P.R. 827, 867 (1987). Se resolvió, en adición, que el Secretario de Justicia igualmente había infringido el Canon 19 de Ética Profesional al no cumplir, durante un tiempo irrazonable, "con el deber de información que dicho canon exige de mantener a sus representados debidamente informados". Íd., pág. 868. Finalmente, y dadas "las circunstancias presentes en el caso", el Tribunal resolvió circunscribir la sanción a imponerse al Secretario Rivera Cruz "a una censura y amonestación". Íd., pág. 869.

La verdadera importancia de la decisión emitida radica en el hecho de que este Tribunal —no obstante reconocer que el Secretario de Justicia no puede estar sujeto a procedimientos disciplinarios por violaciones éticas atribuibles única y directamente a otros abogados del Departamento que dirige— determinó que al abogado que ocupa dicho honroso cargo "le aplican incuestionablemente los principios deontológicos que regulan la profesión de abogado, con las modificaciones aceptables y cognoscibles resultantes de las peculiaridades inherentes que conlleva esa compleja gestión pública". *In re Secretario de Justicia,* supra, pág. 849. Dicho en palabras más sencillas: al titular de la Secretaría de Justicia le aplican los Cánones de Ética que regulan la profesión de abogado.

Y es que ello no puede ser de otra forma ni puede haber constituido sorpresa para persona alguna. No debe perderse de vista que el Secretario de Justicia es el único miembro del gabinete constitucional del Gobernador de Puerto Rico que al desempeñar su cargo *practica la profesión* que se le requiere para poder ejercer el mismo. Recordemos que el Secretario de Justicia, como titular de las distintas divisiones del Departamento de Justicia, es la persona que

tiene la "última palabra" para decidir: A– qué personas serán procesadas criminalmente (jefe de los fiscales); B– qué demandas civiles deberán ser radicadas a nombre del Estado Libre Asociado de Puerto Rico y qué postura deberá asumirse respecto a las demandas civiles que se radiquen contra el Estado (división de litigios), y C– qué posición deberán asumir el Gobernador de Puerto Rico y las agencias de nuestro Gobierno respecto a las distintas controversias jurídicas que se planteen (división de opiniones). Al ejercer las funciones propias de un abogado —y no como un simple administrador de una agencia de gobierno— necesariamente le son aplicables los Cánones de Ética Profesional.

La importancia de esta determinación por parte del Tribunal —la cual hoy plenamente ratificamos— no debe ser nunca subestimada. El abogado que ocupe dicha posición —no obstante su "deber", como miembro del gabinete de un gobernador, de implementar las directrices de éste— vendrá siempre en la obligación, mediante las decisiones que tome, de mantener y vindicar la ley, la ética y las buenas costumbres. La norma establecida le será a este funcionario de gran ayuda para evitar convertirse, en lugar del abogado del Pueblo de Puerto Rico, en un mero "sastre jurídico". Dicha norma es una que los incumbentes del cargo de Secretario de Justicia deberán mantener siempre presente al descargar sus obligaciones como tal, so pena de ser sancionados disciplinariamente por este Tribunal de determinarse que sus actuaciones infringen los Cánones de Ética que regulan la profesión de abogado.

## II

El Tribunal en la opinión emitida reconoció —al evaluar las actuaciones de un Secretario de Justicia a la luz de los Cánones de Ética Profesional— que no es justo que se le exija a éste, o se le impute, "conocimiento real o constructivo

sobre todos los asuntos, casos, incidentes y escritos generados por los numerosos abogados y fiscales del Departamento de Justicia" y que, como regla general, dicho funcionario "no está expuesto a procedimientos disciplinarios por violaciones éticas o errores de sus subalternos". *In re Secretario de Justicia*, supra, pág. 865.

Una lectura integral y cuidadosa de la referida opinión demuestra que, como complemento de lo antes expuesto, se estableció la necesidad de la concurrencia de *tres requisitos* para la imposición de responsabilidad ética al Secretario de Justicia, a saber: (1) que se trate de un *asunto importante*, esto es, no rutinario; (2) que el Secretario de Justicia tenga una *participación activa* en el mismo, es decir, que intervenga personalmente, y (3) que el Secretario tenga *conocimiento personal* de las distintas cuestiones o puntos envueltos en el mismo. Ratificamos enteramente dicha norma. *In re Secretario de Justicia*, supra, pág. 865.

Debido a lo antes expuesto es que se expresó en la referida opinión que considerábamos "ético-adjudicable" la queja presentada sobre conflicto de intereses al amparo de las disposiciones del Canon 21 de Ética Profesional "por *centrarse* [la misma] sobre una *actuación exclusiva* del Secretario en su función de abogado-asesor". (Énfasis suplido.) Por otro lado, encontramos que la responsabilidad ética del querellado, bajo el Canon 19 de Ética Profesional, de mantener informados a sus representados era "indelegable" precisamente por tratarse de un asunto importante, donde el Lic. Héctor Rivera Cruz había tenido una "intervención activa y directa", y en relación con la cual se podía "razonablemente" inferir que tenía conocimiento personal de las cuestiones envueltas.

Endosamos con nuestro voto la opinión de 11 de mayo de 1987 suscrita por el compañero Juez Negrón García por dos razones. En primer lugar, entendimos —y entendemos— que la misma requería, para encontrar al Secretario de

Justicia incurso en violación del Canon 21 de Ética Profesional, *conocimiento personal* de parte de éste del asunto o cuestión que causaba el conflicto de intereses. En segundo lugar, porque estábamos convencidos de que de la prueba a base de la cual las partes habían tenido a bien someter el recurso se podía hacer la inferencia lógica y razonable de que el Lic. Héctor Rivera Cruz, al momento de emitir la opinión a la Secretaria de Instrucción, tenía ese conocimiento personal.

## III

El Lic. Héctor Rivera Cruz esgrime, en apoyo de la moción de reconsideración que radicara, dos argumentos principales, a saber:

A. Que el Tribunal incurrió en una flagrante violación del debido procedimiento de ley al proceder a resolver el caso sin observar el trámite que establece la Regla 13 de su propio Reglamento, y

B. Que él nunca tuvo conocimiento personal de la existencia del caso Civil Núm. PE-82-970 pendiente en aquel entonces ante el Tribunal Superior de Puerto Rico, Sala de San Juan —afirmación que hace bajo juramento— por lo que, bajo los propios términos de la opinión y sentencia emitida por el Tribunal, no procede la determinación de que él infringió los Cánones 19 y 21 de Ética Profesional.

A. El argumento sobre privación del debido procedimiento de ley alegadamente descansa, en síntesis, en que: el procedimiento seguido se desvió de aquel pautado por la citada Regla 13 del Reglamento; no se le dio notificación adecuada sobre los cargos que debía refutar, y se le privó de su derecho a una vista evidenciaria.

Dicho planteamiento es tan carente de méritos que realmente no vale la pena refutarlo en detalle; hacerlo constituiría una pérdida de tiempo. Una somera lectura de la exposición de hechos y del razonamiento que a esos efectos

contiene la opinión disidente suscrita por el Juez Asociado Hon. Antonio S. Negrón García es más que suficiente para darse uno cuenta de la frivolidad extrema de que adolece la comparecencia del Lic. Héctor Rivera Cruz en este aspecto.

B. La afirmación que bajo juramento ahora hace el Lic. Héctor Rivera Cruz en su moción de reconsideración a los efectos de que al momento de emitirse la opinión a la Secretaria del Departamento de Instrucción él desconocía la existencia del caso Civil Núm. PE-82-970, por el contrario, amerita seria consideración y distinto tratamiento.

De entrada, debe quedar claro que entendemos que el Lic. Héctor Rivera Cruz debió, por razón de estar *adecuadamente apercibido* de que se le imputaba conocimiento personal del citado caso, haber planteado su alegado desconocimiento personal con anterioridad al momento en que el Tribunal —con notificación a las partes— diera por sometido el caso. Debe recordarse que —según ello surge de la opinión concurrente del Señor Juez Negrón García— uno de los querellantes, el Lic. Carlos Romero Barceló, en una de sus comparecencias ante este Tribunal específicamente así se lo cuestionó. La excusa del Secretario de que no consideró necesario hacerlo por entender que la queja era contra Héctor Rivera Cruz, en su "carácter institucional" como Secretario de Justicia, y no contra Héctor Rivera Cruz, en su carácter personal, no resulta muy convincente.

La referida postura fue la responsable de que el Tribunal —o, por lo menos, el suscribiente— decidiera en la forma que lo hizo al emitir su opinión el 11 de mayo de 1987, de la cual hoy pide reconsideración. De los hechos que en ese momento teníamos ante nuestra consideración, y de las inferencias lógicas y razonables que de esos hechos podían hacerse, resultaba evidente la conclusión de que el Lic.

Héctor Rivera Cruz, en adición a haber *participado activamente* en un *asunto de importancia* pendiente ante el Departamento de Justicia, tenía *conocimiento personal* del caso Civil Núm. PE-82-970 al emitir la opinión a la Secretaria de Instrucción. Esa fue la prueba con que el Lic. Héctor Rivera Cruz entendió en ese momento procedente y conveniente someter su caso ante este Tribunal. No puede culpar a nadie el referido abogado por lo sucedídole entonces.

En segundo lugar, debe quedar igualmente claro que somos de la opinión que —aun aceptando la afirmación del Lic. Héctor Rivera Cruz sobre su desconocimiento personal del caso Civil Núm. PE-82-970— la forma y manera en que él, como Secretario de Justicia, manejó este asunto en particular deja mucho que desear. Surge de la propia moción de reconsideración radicada por el Lic. Héctor Rivera Cruz que él participó activamente, en unión a sus principales subalternos, en una reunión llevada a cabo el 6 de marzo de 1985 en el Departamento de Justicia en la cual se discutieron en forma general todos los casos en que estaba envuelto *como codemandado* el Lic. Carlos Romero Barceló. Se decidió por el Lic. Héctor Rivera Cruz y sus ayudantes, según se expresa en la moción de reconsideración radicada, que no existía problema legal alguno para que el Departamento de Justicia continuara representando al Lic. Carlos Romero Barceló por razón de que éste era un *codemandado nominal.* Incomprensiblemente ni el Lic. Héctor Rivera Cruz, ni ninguno de sus ayudantes, entendió necesario profundizar un poco en los referidos casos. De haberse hecho, fácilmente se hubieran percatado de que uno de los casos trataba sobre la controversia de los Gerentes Escolares. En adición tenemos, como correctamente señala el Señor Juez Negrón García en la opinión que hoy emite, que el día 15 de marzo de 1985 —fecha en que el Lic. Héctor Rivera Cruz suscribió tanto su carta opinión a la

Secretaria de Instrucción como la ratificación de la norma sobre abstención de opinar sobre casos sub júdice— éste no se preocupó por enterarse si dicha opinión podía tener relación con algún caso pendiente ante los tribunales. En vista de ello, resulta perfectamente entendible por qué el compañero Juez Negrón García, en la referida opinión, califica esa conducta del Secretario de Justicia como una demostrativa de "juicio pobre y poco prudente", y por qué el compañero Juez Pons Núñez, en su opinión disidente de fecha 11 de mayo de 1987, catalogó la misma como una situación "indeseable" y poco "ejemplarizante".

No estamos aquí, sin embargo, para pasar juicio sobre si estuvo o no al alcance del Lic. Héctor Rivera Cruz —mediante el despliegue de un poco más de diligencia— el conocimiento del caso donde se cuestionaba la legalidad del puesto de los Gerentes Escolares; esto es, para decidir si éste fue o no negligente en el desempeño de su deber como Secretario de Justicia. *Nuestra función se debe concretar a determinar si éste incurrió o no en un conflicto de intereses en violación del Canon 21 de Ética Profesional.*

Para ello, repetimos, entendemos es vital determinar si el querellado tenía *conocimiento personal* de la existencia del caso de los Gerentes Escolares. Ello fue lo que precisamente determinamos en la opinión y sentencia de 11 de mayo de 1987. Lo hicimos a base de la evidencia que entonces formaba parte de los autos y de las inferencias lógicas y razonables que de dicha evidencia podían hacerse.

Es por ello que no podemos endosar la posición que asumen los compañeros Jueces Negrón García y Ortiz en la opinión que hoy emiten a los efectos de que el conocimiento personal por parte del Lic. Héctor Rivera Cruz del caso Civil Núm. PE-82-970 no es un requisito esencial en la determinación de si éste incurrió o no en un conflicto de intereses en violación del Canon 21 de Ética Profesional. Dicha posición representa censurar y amonestar al Lic.

Héctor Rivera Cruz, en su carácter personal como abogado, por una "actuación institucional", o intervención puramente formal ejecutiva, como titular del Departamento de Justicia de Puerto Rico. Dicho de otra forma, su posición se reduce a sancionar al Lic. Héctor Rivera Cruz bajo el Canon 21 de Ética Profesional por razón de que, teniendo conocimiento sus subalternos de los hechos que daban lugar al conflicto, él *debió* haberlo sabido.

Esa, en primer lugar, no fue la norma que se estableció en la opinión y sentencia de 11 de mayo de 1987. En segundo lugar, el endoso de esta posición tendría consecuencias devastadoras no sólo sobre el Departamento de Justicia de Puerto Rico sino que sobre la práctica de la profesión en general. Cabe preguntarse, ¿qué abogado estaría en disposición de aceptar desempeñar ese cargo cuando continuamente corre el peligro de ser sancionado por este Tribunal por actos o circunstancias sobre las cuales no tuvo conocimiento personal? Debe mantenerse bien presente, por otro lado, que no habría razón alguna —de dicha norma ser establecida— para no aplicar la misma a la práctica de la abogacía en grupo. Según la tesis sustentada por los distinguidos Jueces Negrón García y Ortiz, el jefe de un grupo de abogados o el socio principal de un bufete podría incurrir en un conflicto de intereses a base de información que posean sus subalternos o asociados y que éstos nunca le transmitan. Esto es, se le imputaría a éstos el conocimiento que guardan para sí sus subalternos. En nuestra humilde opinión ello no sería justo. Una cosa es la responsabilidad civil en que todos los miembros de un bufete o grupo de abogados puedan incurrir por actos de uno de ellos; otra cosa es la sanción disciplinaria —que puede alcanzar hasta la pérdida del título de abogado— por violaciones éticas.

Es vital a nuestro entender, insistimos, que el abogado en particular tenga conocimiento de todas las cuestiones que

causan el conflicto de intereses. A esa determinación se puede llegar ya sea por prueba directa o mediante la inferencia lógica y razonable de unos hechos probados. Ello es muy distinto, repetimos, de la posición a los efectos de que se le puede *imputar* a ese abogado el conocimiento e información en poder de sus subalternos.

## IV

Personalmente endosamos la opinión que emitiera el Tribunal el 11 de mayo de 1987 por razón de entender, repetimos, que de los hechos probados se podía inferir lógica y razonablemente que el Lic. Héctor Rivera Cruz tenía, al emitir la opinión a la Secretaria de Instrucción, conocimiento personal del "contenido" del caso pendiente ante los tribunales en que se cuestionaba la legalidad de dichos cargos.[1] Hoy, sin embargo, ha sido traído ante nuestra

[1] Como consecuencia de la reunión que sostuviera el Lic. Héctor Rivera Cruz con sus ayudantes el día 6 de marzo de 1985, éste le escribió una carta al Lic. Carlos Romero Barceló, la cual lleva fecha de 11 de marzo de 1985 —o sea, cuatro días antes de suscribir la opinión dirigida a la Secretaria de Instrucción sobre los Gerentes Escolares— en la que, en lo pertinente, le informó:

" ... *hemos examinado éste y los otros casos* en que está usted recibiendo los beneficios de la Ley Número 9 de 26 de noviembre de 1975. *Luego de este estudio*, se ha tomado la determinación de que los abogados del Departamento continúen representándolo en todos los procedimientos que están pendientes en los que aparece usted como codemandado.

.  .  .  .  .  .  .  .

. . . "*En estos casos*, aunque se le demanda a usted en su carácter personal, se hace nominalmente, ya que realmente es el Estado Libre Asociado el que está envuelto." (Énfasis suplido.)

Es a base de las manifestaciones contenidas en dicha carta que personalmente llegamos a la conclusión lógica y razonable que el Lic. Héctor Rivera Cruz, al suscribir la opinión a la Secretaria de Instrucción, tenía conocimiento del caso de los Gerentes Escolares, el cual según los términos de la citada carta, había "examinado" y estudiado.

En su moción de reconsideración, sin embargo, el Lic. Héctor Rivera Cruz afirma bajo juramento que él nunca examinó ni estudió esos expedientes. Que dicho examen fue realizado por uno de sus ayudantes quien meramente le comunicó su conclusión a los efectos de que el Lic. Carlos Romero Barceló era un codemandado nominal.

atención —en reconsideración— *una afirmación bajo juramento del Lic. Héctor Rivera Cruz* donde expresa que no tenía tal conocimiento. La declaración jurada de ese abogado, el cual ocupa el cargo de Secretario del Departamento de Justicia de Puerto Rico, tiene que por necesidad tener más peso *en nuestro ánimo de juez* que la inferencia lógica y razonable que surge de la evidencia que forma parte de los autos a los efectos de que él sí tenía conocimiento del referido caso. Por más lógica y razonable que pueda parecer esa inferencia, la misma no deja de ser precisamente eso, una *inferencia* que de unos hechos probados se hace. Dicha inferencia tiene que ceder ante la afirmación bajo juramento en contrario del Secretario de Justicia de Puerto Rico.

Ante esta situación, fiel a la obligación de este Tribunal de resolver los asuntos ante su consideración contando con un cuadro de hechos completo, lo procedente sería que se le concediera término a los querellantes para expresarse respecto a la reconsideración radicada, o que el Tribunal señale una vista evidenciaria para dilucidar esta cuestión, o una combinación de ambas alternativas. *Dicha posición, sin embargo, no tiene el endoso de la mayoría de los señores jueces que participan en el caso.*

Entendemos que en estos momentos nos encontramos ante un obstáculo insalvable. Por un lado, como expresáramos anteriormente, somos del criterio que la inferencia lógica y razonable a los efectos de que el Lic. Héctor Rivera Cruz tenía conocimiento personal del "contenido" del caso Civil Núm. PE-82-970 al emitir la opinión en controversia debe ceder —de ordinario— ante una afirmación bajo juramento en contrario. Por otro lado, tampoco tenemos duda de que, no obstante este procedimiento no ser uno de carácter adversativo, para que el Tribunal (y sus jueces) verdaderamente estén en posición de resolver la moción de reconsideración debe concedérsele a los querellantes la

oportunidad de refutar bajo juramento, si es que lo pueden hacer, la afirmación del Lic. Héctor Rivera Cruz de que él no tenía conocimiento personal del "contenido" del referido caso, en cuya situación el asunto deberá ser resuelto en una vista evidenciaria plenaria ante el Tribunal.[2] Debe quedar meridianamente claro, por último, que de los querellantes no poder refutar bajo juramento la afirmación específica del Lic. Héctor Rivera Cruz, votaríamos para dejar sin efecto la censura y amonestación que se decretara en nuestra sentencia de 11 de mayo de 1987.

En conclusión, somos del criterio que el Tribunal en estos momentos no está en posición de resolver la referida moción de reconsideración por carecer de los hechos y elementos de juicio necesarios para así hacerlo.

—O—

Voto particular emitido en reconsideración por el Juez Asociado Señor Alonso Alonso.

Me reitero en las expresiones que vertí en mi opinión disidente de 11 de mayo de 1987. Además, examinada la declaración jurada presentada por el Lic. Héctor Rivera Cruz con su moción de reconsideración, la cual no ha sido refutada, procede dejar sin efecto la censura y amonestación, y ordenar el archivo y sobreseimiento de las querellas.

---

[2] No constituye fundamento válido en contrario a la posición que asumimos el hecho de que los querellantes, a pesar de haber sido notificados de la moción de reconsideración del Lic. Héctor Rivera Cruz, no hayan comparecido en oposición a la misma. En primer lugar, tratándose de un procedimiento al amparo de nuestra jurisdicción disciplinaria, el mismo está permeado de interés público, *In re Pagán Ayala*, 117 D.P.R. 180 (1986), lo cual nos obliga a resolver el mismo teniendo un cuadro completo de los hechos. En segundo lugar, no tratándose de un procedimiento adversativo, los querellantes no estaban obligados a así hacerlo.